IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRIAN MICHAEL WATERMAN,

    Plaintiff,

v.                                      Case No. 18-3092-JWB-KGG (Lead Case)
                                                                            & No. 18-3135-JWB-KGG

MICHELLE TIPPIE, *et al.*,

    Defendants.

**MEMORANDUM AND ORDER**

This matter comes before the court on Defendant Danny Davis' ("Davis") motion to dismiss (Doc. 153), Defendant Kristin Wagner's ("Wagner") motion to dismiss (Doc. 155), and Plaintiff's motion to compel (Doc. 242.) The motions are fully briefed and ripe for decision. (Docs. 154, 155, 161, 163, 168, 170, 172, 173, 181, 242, 259.) For the reasons stated herein, Defendants' motions are GRANTED and Plaintiff's motion is DENIED as MOOT.

**I.    Background**

These two cases were filed by Plaintiff, pro se, in 2018 and later consolidated for judicial efficiency.[1] The complaints are brought under 42 U.S.C. § 1983[2] alleging various constitutional

---

[1] The court dismissed some of the claims in both No. 18-3092 and No. 18-3135 before consolidating the remaining claims in both cases and designating No. 18-3092 as the lead case moving forward. *See* (No. 18-3092, Doc. 63; No. 18-3135, Doc. 150.)

[2] In his briefings, Plaintiff mentions both the Eighth and Fourteenth Amendments. The court notes that the Eighth Amendment protects the rights of convicted prisoners, whereas the Fourteenth Amendment protects the rights of pretrial detainees. *See Strain v. Regalado,* 977 F.3d 984, 989 (10th Cir. 2020). The Supreme Court has held that this distinction in status makes a difference in the standard governing excessive force claims. *See Kingsley v. Hendrickson,* 576 U.S. 389 (2015). Nevertheless, the distinction makes no difference here. In *Strain*, the Tenth Circuit rejected an argument that *Kingsley* altered the standard applicable to claims of deliberate indifference. *Id.* at 993. Accordingly, the standard governing Eighth Amendment claims of deliberate indifference to inmate health applies to Plaintiff's claims. *See id.* at 993 ("We therefore join our sister circuits that have declined to extend *Kingsley* to deliberate indifference claims and will apply our two-prong test to Plaintiff's claims.")

violations by persons connected with the Cherokee County Jail (the "Jail"), in which Plaintiff has been confined pending a criminal trial.

On October 4, 2018, Plaintiff filed his Amended Complaint in No. 3135. (No. 3135, Doc. 53.) In the Amended Complaint, Plaintiff alleges § 1983 civil rights actions against Defendants Davis and Wagner in both their official and individual capacities. (No. 3135, *Id*. at 9-10.) Davis is the kitchen supervisor at the Jail and provided Plaintiff with meals during his incarceration. Wagner is a nurse who works at the Jail and provided certain medical services to Plaintiff while he was incarcerated.

In Count III, Plaintiff alleges that Wagner, acting under color of state law, adopted an unconstitutional body mass index ("BMI") policy that resulted in an insufficient diet. (No. 3135, *Id*. at 8.) The BMI policy only requires special diets when an inmate's BMI falls below 18.5.[3] (*Id*. at 9.) Plaintiff alleges that, because of this BMI policy, his weight went from 171 pounds on February 1, 2018 to 142 pounds on or around October 4, 2018. (No. 3135, *Id*.) Plaintiff states that he weighed 171 pounds on February 1, 2018; 166 pounds on February 8, 2018; 152 pounds in May 2018; and 142 pounds in October 2018. (No. 3135, *Id*. at 9-10.)

Plaintiff alleges that Wagner previously diagnosed him with hypoglycemia and submitted three calorie surplus special diets to Davis in 2017. (No. 3135, *Id*. at 10.) However, Wagner refused to adjust his diet upon weight loss or reinstate a previous diet she had prescribed upon Plaintiff's return to the Jail in February 2018.[4] Plaintiff asserts that Wagner told him "due to your unique medical condition I've had to adopt a BMI policy that only requires me to prescribe diets when BMI reaches 18.5." (No. 3135, *Id*. at 9.) Further, Plaintiff alleges Wagner tampered with

---

[3] Judge Murguia previously ruled in this case that a BMI between 18.5 and 24.9 is normal. (No. 3135, Doc. 122 at 5.)
[4] Plaintiff briefly mentions that at some point before May 2018 Wagner gave him an additional 160 calories per day, but she refused to add any more. (No. 3135, Doc. 53 at 9.)

the scales to add weight, thereby keeping him above or close to 18.5, but does not plead any specific facts to support the conclusory statement. (No. 3135, *Id*.) From February to October 2018, Plaintiff asserts Wagner refused to view his calorie intake as she "stated that we get 2900 calories" per day. (No. 3135, *Id*.) By Plaintiff's estimations, he receives a high of 1700 calories per day, can pull his skin two to three inches from his body, his "cheeks are sunken in, my ribs show, [and] my hip bones are sticking out." (No. 3135, *Id*.) Plaintiff argues Wagner has been deliberately indifferent to his serious medical need for a diet to maintain his body weight. (No. 3135, *Id*. at 10.) Plaintiff claims because of Wagner's BMI policy he has suffered significant weight loss, experiences "physical pains" and "major discomfort" of an unspecified nature or intensity. (No. 3135, *Id*.)

Additionally, Plaintiff names Davis in Count III because, as the kitchen supervisor, he is responsible for "serving adequate meals that are adequately nutritional." (No. 3135, *Id*. at 9.) Plaintiff alleges Davis violated the constitution by not providing him nutritionally adequate meals. Due to the inadequate meals, Plaintiff has allegedly suffered significant weight loss, experiences "physical pains" and "major discomfort" of an unspecified nature or intensity. (No. 3135, *Id*.)

In Count V, Plaintiff alleges that on May 31, 2018, Wagner saw a staph infection under his left arm pit, and that she said she was going to order antibiotics. (No. 3135, *Id*. at 13.) However, Plaintiff did not receive medication until June 7, 2018, after he filed a grievance. (No. 3135, *Id*.) Plaintiff states that "[t]o not place my medication on the cart for over a week until I filed a grievance clearly shows a deliberate indifference" to his medical need. (No. 3135, *Id*.) Plaintiff states that "[t]his was done to make me suffer in pain intentionally in retaliation for using my first amendment right [to file] grievances, on writing government agencies on her, plus a civil suit." (No. 3135, *Id*.)

## II.     Standards

A party asserting Eleventh Amendment Immunity may move to dismiss under Rule 12(b)(1) because "Eleventh Amendment Immunity concerns the subject matter jurisdiction of the district court." *Ruiz v. McDonnell*, 299 F.3d 1171, 1180 (10th Cir. 2002). "Different standards apply to a motion to dismiss based on lack of subject matter jurisdiction under Rule 12(b)(1) and a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012). When the court is faced with a motion invoking both Rule 12(b)(1) and 12(b)(6), the court must first determine that it has subject matter jurisdiction over the controversy before reviewing the merits of the case under Rule 12(b)(6). *Bell v. Hood*, 327 U.S. 678, 682 (1946). Because federal courts are courts of limited jurisdiction, a presumption exists against jurisdiction, and "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

The court will grant a 12(b)(6) motion to dismiss only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the factual allegations need not be detailed, the claims must set forth entitlement to relief "through more than labels, conclusions and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008). The allegations must contain facts sufficient to state a claim that is plausible, rather than merely conceivable. *Id*. "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court construes any reasonable inferences from these facts in favor of the plaintiff. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

## III. Analysis

Because Plaintiff is proceeding pro se, the court is to liberally construe his filings. *United States v. Pinson*, 585 F.3d 972, 975 (10th Cir. 2009). However, liberally construing filings does not mean supplying additional factual allegations or constructing a legal theory on Plaintiff's behalf. *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). Additionally, the court is "mindful of the primary management role of prison officials who should be free from second guessing or micro-management by the federal courts." *Estate of DiMarco v. Wyoming Dept. of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007); *see also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them.").

### A. Jurisdiction Over Official Capacity Claims

Under the Eleventh Amendment, Defendants argue this court lacks subject matter jurisdiction to hear Plaintiff's claims against them in their official capacities. (No. 3092, Doc. 154 at 3-4; Doc. 155 at 3-5.) Plaintiff responds to Davis' motion by arguing "no immunity applies for deliberately serving 1700 calories a day to pretrial detainees." (No. 3092, Doc. 161 at 2.) In response to Wagner's motion, Plaintiff simply states "[t]he BMI policy isn't an 11th Amendment shield." (No. 3092, Doc. 163 at 6.)

Generally, the Eleventh Amendment bars federal jurisdiction over suits against a state for money damages. *Higganbotham v. Okla. ex rel. Okla. Tranp. Com'n,* 328 F.3d 638, 644 (10th Cir. 2003). Such immunity, however, does not extend to counties, municipalities, or other local government entities. *Steadfast Ins. Co. v. Agric. In. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007) (citation omitted). To determine whether an official is a state or county actor, the Tenth Circuit

employs the four-factor test described in *Steadfast*. *Couser v. Gay*, 959 F.3d 1018, 1026 (10th Cir. 2020). Here, rather than analyzing the *Steadfast* factors, both Davis and Wagner simply assert they are state actors entitled to immunity. This is insufficient to determine whether officials working at a county jail are entitled to the same treatment as their state prison counterparts. *See West v. Atkins*, 487 U.S. 42, 56 (1988) (holding private doctors under contract with a state prison to provide medical care are considered state actors.)

Instead, the court finds Plaintiff's claims against Wagner and Davis, in their official capacity, is the equivalent of a suit against Cherokee County. *See Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 n. 2 (10th Cir. 1998); *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978) (noting official-capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent.") In order to impose municipal liability under § 1983, Plaintiff must prove: "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers*, 151 F.3d at 1316.

Applying these standards to the Amended Complaint, the court concludes Plaintiff has failed to state a claim against any municipality. A constitutional violation is essential to pinning liability upon a municipality. In this case, as discussed *infra*, Plaintiff fails to adequately plead an underlying violation of federal rights; thus, there can be no municipal liability. Accordingly, the claims against the Defendants in their official capacities are dismissed.

    **B.    Wagner's Individual Liability**

Wagner moves for dismissal of both individual capacity claims on the basis of qualified immunity. "Individual defendants named in a § 1983 action may raise a defense of qualified immunity." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013). Qualified

6

immunity "shields public officials ... from damages actions unless their conduct was unreasonable in light of clearly established law." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quotations omitted). When the defense of qualified immunity is asserted, a plaintiff must show: "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo*, 739 F.3d at 460.

For a right to be clearly established, the contours of that right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). A right is clearly established if there is a "Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts found the law to be as the plaintiff maintains." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010)). The court must determine "whether the violative nature of particular conduct is clearly established." *Ziglar v. Abbasi,* 137 S. Ct. 1843, 1866 (2017) (internal quotations omitted).

In doing so, the court is not required to find that "'the very action in question has previously been held unlawful.'" *Id.* at 1866 (quoting *Anderson*, 483 U.S. at 640); *see also Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) ("A previous decision need not be materially factually similar or identical to the present case; instead, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.")

> There "need not be a case precisely on point." *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018). But "it is a 'longstanding principle that clearly established law should not be defined at a high level of generality.'" *Id.* (quoting *White v. Pauly*, __ U.S. __, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017) (per curiam) ); *see also District of Columbia v. Wesby*, __ U.S. __, 138 S. Ct. 577, 590, 199 L. Ed. 2d 453 (2018) ("The clearly established standard ... requires a high degree of specificity."

7

(quotations omitted)). "[T]he salient question ... is whether the state of the law ... gave [the defendants] fair warning that their alleged treatment of [the plaintiffs] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002).

*Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir. 2019). The test is whether "the unlawfulness of the officer's conduct '[is] apparent . . . in the light of pre-existing law." *Ziglar*, 137 S. Ct. at 1867 (quoting *Anderson*, 483 U.S. at 640). Generally, "existing precedent must have placed the statutory or constitutional question beyond debate" for a right to be clearly established. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

### 1. Dietary Policy

In Count III of his Amended Complaint, Plaintiff alleges that Wagner instituted a BMI policy that has resulted in the unconstitutional deprivation of medical care because his "weight drops considerably when not on a prescribed diet." (No. 3135, Doc. 53 at 9.) Wagner argues Plaintiff has failed to plead sufficient facts illustrating deliberate indifference because a diet based on BMI does not violate the Constitution and Plaintiff's BMI remained within a normal range. (No. 3092, Doc. 155 at 7-8.)

"The Fourteenth Amendment prohibits deliberate indifference to a pretrial detainee's serious medical needs." *Strain v. Regalado*, 977 F.3d 984, 987 (10th Cir. 2020). In order to state a claim for a failure to provide medical care, Plaintiff's allegations must satisfy "both an objective and a subjective component" with respect to each Defendant. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). As explained by the Tenth Circuit:

> The prisoner must first produce objective evidence that the deprivation at issue was in fact "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citations omitted). We have said that a "medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock*, 218 F.3d at 1209 (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)

> (further quotation omitted)). Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim. *See, e.g., Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997). Moreover, a delay in medical care "only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quotation omitted). The substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

*Mata*, 427 F.3d at 751. The subjective component is not satisfied "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. 837. Thus, in order to establish deliberate indifference, Plaintiff must show Wagner knew that his weight loss was sufficiently serious to require a special diet.

Here, Plaintiff has failed to allege his weight loss constitutes a sufficiently serious medical need requiring a special diet. Plaintiff did not plead that his BMI ever dropped below 18.5 or that a BMI range of 18.5 to 24.9 is not considered normal.[5] Plaintiff's weight loss alone does not amount to a constitutional violation and the allegations fail to show that Plaintiff requires a special diet when he is already within a healthy weight range. Despite alleging a change in physical appearance, at no time has Plaintiff reported or been observed to have suffered any adverse health consequences as a result of weight fluctuations. Additionally, even if there was a sufficient harm, Plaintiff's allegations undercut any possible finding of Wagner's subjective knowledge. Plaintiff admits that his BMI was above 18.5 at all relevant times prior to, and at the time of, filing the

---

[5] As noted above, the court has previously ruled in this case that a BMI between 18.5 and 24.9 is normal. (No. 3135, Doc. 122 at 5.)

9

Amended Complaint. (No. 3092, Doc. 163 at 1.)[6] He further alleges that Wagner believed he was being served 2900 calories a day, and that she even ordered him to be served an additional 160 calories daily. (No. 3135, Doc. 53 at 9.) Thus, from Plaintiff's own allegations, Wagner subjectively believed that a BMI above 18.5 was healthy and at all relevant times his BMI was in the normal range. Those allegations fail to plead the subjective component of a deliberate indifference claim. At most, this creates a disagreement over the course of treatment and does not rise to a constitutional violation. *See Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (finding a "prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation"). Thus, Wagner is entitled to qualified immunity on this claim. Accordingly, the court dismisses Count III against Wagner.

### 2. Delay in Medical Care

In Count V of his Amended Complaint, Plaintiff alleges Wagner saw a staph infection under his arm pit on May 31, 2018 and he did not receive antibiotics until he filed a grievance on June 7, 2018. (No. 3135, Doc. 53 at 13.) Plaintiff argues "[t]o not place my medication on the cart for over a week until I filed a grievance clearly shows a deliberate indifference" to his staph infection. (No. 3135, *Id.*) However, as discussed *supra*, in order to establish the objective component for a claim of deliberate indifference to an inmate's serious medical needs, Plaintiff must identify a medical need as to which "the delay [in providing treatment] resulted in substantial harm." *Oxendine*, 241 F.3d at 1276. Plaintiff fails to allege any substantial harm that resulted from the delay. Therefore, Plaintiff fails to adequately plead the objective component of a claim

---

[6] In his response to Wagner's motion, Plaintiff also alleges that his BMI dipped below 18.5 sometime after he filed the Amended Complaint; however, having a pending case does not create a running tab for a plaintiff to continually update his allegations and assert new claims without following the proper procedures for amending his pleading.

of deliberate indifference to his serious medical needs. Accordingly, Wagner is entitled to qualified immunity and the medical delay claim is dismissed.

### 3. Retaliation Claim

Also, in Count V of his Amended Complaint, Plaintiff claims Wagner withheld the antibiotics from the previous section "to make me suffer in pain intentionally in retaliation for using my first amendment right filing grievances, an [sic] writing government agencies on her, plus a civil suit." (No. 3135, Doc. 53 at 13.) Wagner argues the claim should be dismissed because Plaintiff "has not alleged facts plausibly showing that Wagner acted in retaliation against plaintiff." (No. 3092, Doc. 155 at 12.) The court finds Plaintiff has failed to show a retaliation claim.

To establish a First Amendment retaliation claim, Plaintiff must show: (1) he was engaged in constitutionally protected activity; (2) that Wagner's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) Wagner's adverse action was substantially motivated as a response to his exercise of constitutionally protected conduct. *Nielander v. Bd. of Cty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009).

A simple review of the docket reveals Plaintiff has no fear of filing grievances, writing government agencies, or filing additional civil lawsuits. This fact is highlighted further by Plaintiff arguing he did not receive his antibiotic until he filed a new grievance against Wagner. (No. 3135, Doc. 53 at 13.) Additionally, while Plaintiff states the dangers of a staph infection, he fails to claim any injury resulting from getting antibiotics a week after his examination. (No. 3135, *Id*.) Rather, Plaintiff's allegations are solely based on his subjective beliefs without any supporting facts. *See Nielander*, 582 F.3d at 1165 ("A plaintiff's subjective beliefs about why the government took action, without facts to back up those beliefs, are not sufficient" to establish retaliatory

11

motive). Indeed, it appears that the Jail's grievance policy may have served its purpose in this instance. According to Plaintiff's allegations, he filed a grievance when his medication was not timely provided, and then he received his meds. Such simple delays, with no residual harm, that are promptly resolved through the grievance process do not rise to constitutional violations. Accordingly, the court dismisses Count V against Wagner.[7]

C.     **Davis' Individual Liability**

In Count III, Plaintiff alleges Davis violated his constitutional rights by failing to provide Plaintiff with adequate meals, which caused severe weight loss. Davis responds by asserting qualified immunity and arguing Plaintiff has failed to demonstrate the violation of a clearly established constitutional right. (No. 3095, Doc. 154 at 4.) As discussed above, the court again finds Plaintiff has failed to illustrate a constitutional violation when his BMI has remained within a normal range.

"A substantial deprivation of food may be sufficiently serious to state a conditions of confinement claim under the Eighth Amendment." *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002); *see also Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006 (stating that [p]rison official must ensure inmates receive the basic necessities of [nutritionally] adequate food") (internal quotation marks omitted). "To state a claim for food deprivation, a prisoner must allege both (1) a 'sufficiently serious' deprivation of 'the minimal civilized measure of life's necessities' and (2) 'deliberate indifference' by prison officials to a 'substantial risk of serious harm to an inmate.'" *Strope v. Sebelius*, 189 F. App'x 763, 766 (10th Cir. 2006) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998). Thus, Plaintiff must show that Davis was

---

[7] Because Wagner is dismissed from this case, Plaintiff's motion to compel (No. 3092, Doc. 242) targeting Wagner is now moot.

deliberately indifferent to his weight loss in failing to provide him with a special diet. *See Thompson*, 289 F.3d at 1222.

Here, Plaintiff once again fails both the subjective and objective components of his Eighth Amendment claim. Plaintiff has not pleaded any facts suggesting Davis was aware that he had a serious medical need for additional calories. Rather, Plaintiff maintains he stayed within a normal BMI range throughout his Amended Complaint, which undercuts his arguments of being underweight and malnourished. Further undercutting any hope of showing deliberate indifference is the fact that Plaintiff fails to plead any interaction with Davis whatsoever throughout his Amended Complaint. Plaintiff's amended pleading is devoid of allegations showing that Davis was aware of Plaintiff's particular medical needs or that Davis denied him adequate food in spite of any such awareness. The court is unable to draw the conclusions sought by Plaintiff when he has failed to connect any of the legal dots with factual support. Accordingly, the court finds that Davis is entitled to qualified immunity and Count III is dismissed.

## IV. Conclusion

Defendant's motions to dismiss (Docs. 153, 155) are GRANTED. Plaintiff's motion to compel (Doc. 242) is DENIED as MOOT. This ruling resolves all remaining claims against Davis and Wagner from both the lead and companion cases. Accordingly, Davis and Wagner are dismissed from these proceedings.

IT IS SO ORDERED this 25th day of June, 2021.

                                                                                          s/ John W. Broomes
                                                                                          JOHN W. BROOMES
                                                                                         UNITED STATES DISTRICT JUDGE